IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1.    KAYLA J. LOVELADY,<br><br>      Plaintiff,<br><br>v.<br><br>1.    PRIME INDUSTRIAL<br>      RECRUITERS, INC., d/b/a<br>      ELITE WORKFORCE<br>      MANAGEMENT,<br><br>      Defendant. | Case No. CIV-20-1169-G<br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

## COMPLAINT

Plaintiff Kayla J. Lovelady, through her counsel of record, Stockton Talbert, respectfully files her Complaint against Defendant Prime Industrial Recruiters, Inc., d/b/a Elite Workforce Management.

## The Parties

1. Plaintiff Kayla J. Lovelady ("**Plaintiff**" or "**Lovelady**") is a resident of Oklahoma.

2. Defendant Prime Industrial Recruiters, Inc. ("**Defendant**" or "**Prime**") is a domestic for-profit business corporation that conducts business in Oklahoma and does business as Elite Workforce Management.

3. Prime was Lovelady's employer and employed more than 50 employees at the time of her discharge.

## Jurisdiction & Venue

4. This civil action arises out of Lovelady's former employment with Prime and is based on the following claims: (1) pregnancy discrimination, harassment, and/or retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e(k); and (2) interference with and/or retaliation for the use or attempted use of medical leave under the Family and Medical Leave Act, 29 U.S.C. § 2615.

5. This Court has federal question jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(1), and/or 29 U.S.C. § 2617(a)(2).

6. Venue is proper in this Court under 28 U.S.C. § 1391(b), 42 U.S.C § 2000e-5(f)(3), and/or 29 U.S.C. § 2617(a)(2).

7. Prime conducted business in and can be served in Canadian County, Oklahoma.

8. Lovelady worked for Prime in Canadian County, Oklahoma.

9. Lovelady exhausted her administrative remedies with the Equal Employment Opportunity Commission ("**EEOC**") before filing this action.

10. Lovelady submitted a Charge of Discrimination to the EEOC for Prime and Elite on or about April 9, 2019, which was assigned Charge No. 564-2018-01265.

11. The EEOC issued a Dismissal and Notice of Rights letter dated August 21, 2020.

12. Lovelady files this action within ninety (90) days of the date of the EEOC's Dismissal and Notice of Rights letter.

13. All conditions precedent to filing this action have occurred or have been performed.

## Statement of the Claim

14. Lovelady was employed as a full-time manager by Prime, a staffing agency that operates under Elite, beginning in or around June 2016.

15. After approximately one year of continuous employment, Lovelady was promoted to the position of On-Site Manager and was given a pay raise.

16. Lovelady was qualified for her positions with Prime.

17. On or about February 28, 2018, Lovelady informed Joy Moody ("**Moody**"), a Vice President, that she was pregnant.

18. Shortly after Lovelady disclosed her pregnancy, Prime began a concerted campaign to discriminate and harass Lovelady because of her pregnancy and to prevent her use of medical leave, which was carried out by Moody and others.

19. This campaign was a distinct, unmistakable, and immediate departure from Prime's more favorable treatment of Lovelady before she disclosed her pregnancy.

20. Prime engaged in this discriminatory and harassing conduct to force Lovelady from her job before her pregnancy impacted its business

operations and before Lovelady required medical leave or other accommodations in her employment because of her pregnancy.

21. Prime's conducted was designed to cause Lovelady to quit her job or to act in a manner that would give Prime a pretext to discharge her.

22. Lovelady endured this discriminatory and harassing treatment while pregnant, causing her to suffer emotional distress.

23. Among other things, Prime intentionally removed tasks and other work assignments from Lovelady after she disclosed her pregnancy, excluded Lovelady from meetings even though they involved her typical work assignments, and purposefully withheld information from Lovelady so that she would not have the information she needed to do her job.

24. Prime also held Lovelady to a higher standard than other similarly situated employees who were not pregnant, upon information and belief.

25. Prime moved Lovelady's desk away from others to an isolated and secluded area to force her to work in an undesirable environment.

26. Prime also physically moved work items that Lovelady used and had already organized, including paperwork, a table, a phone, chairs, and other tools she needed to properly do her job, to force her to physically move those items back and bend over to pick things up off the floor while she was pregnant.

27. After Lovelady disclosed her pregnancy, Derrelyn Shertbet ("**Shertbet**"), an Office Manager, began calling Lovelady derogatory names,

4

made negative comments about her family members to provoke Lovelady to respond angrily, made threats against her, and lied to and about her among other employees.

28. Moody and Shertbet also enticed Lovelady to violate policies and procedures, so that Lovelady could be accused of not following proper protocol.

29. Moody had witnessed some of Sherbet's name-calling and cursing at Lovelady and condoned it by laughing without taking any steps to stop it from happening.

30. Lovelady complained to Moody and Shertbet numerous times, seeking to informally resolve the disparate treatment.

31. Lovelady discussed with both Moody and Shertbet the harassing and hostile treatment, including Shertbet's name-calling, aggressive behavior, request for Lovelady to violate policy or procedure, and the overall discrimination and harassment due to her pregnancy.

32. Lovelady also complained to Moody and Shertbet that the discrimination and harassment was negatively affecting her and her unborn child's well-being.

33. Moody did not take any action to stop the discriminatory and harassing conduct, which continued after her complaints.

34. In response to one of Lovelady's complaints, for example, Moody told Lovelady to lose her attitude and redirected the conversation away from her complaint without addressing her concerns.

35. Lovelady endured this treatment on a constant basis for more than a month.

36. On or about April 9, 2018, Lovelady fainted and had to be taken to the emergency room because of pregnancy complications.

37. While at the hospital, Lovelady was seen by emergency room doctors, her OBGYN, her primary care physician, and a neurologist, among other medical providers.

38. Lovelady was placed on bed rest for one week and worked from home because of her pregnancy complications.

39. Shortly after she was taken to the emergency room, however, Moody instructed Lovelady to turn in her work laptop so that Lovelady could no longer work from home.

40. On or about April 12, 2018, Lovelady turned in her work laptop.

41. On or about April 15, 2018, Lovelady complained in writing to Chris Rawlings ("**Rawlings**"), Prime's founder and Chief Executive Officer, that she was being subjected to discrimination and harassment in the workplace because of her pregnancy.

42. Rawlings did not remedy the hostile work environment.

43. Instead, on April 15, 2018, Rawlings retaliated against Lovelady by discharging her, just hours after Lovelady's complaint.

44. Prime claimed that that it discharged Lovelady because she destroyed her work laptop.

45. Lovelady did not destroy her work laptop as Prime alleged.

46. Prime's claimed basis for discharging Lovelady was a pretext for unlawful discrimination and/or retaliation.

47. Lovelady was discharged because of her pregnancy, use of medical leave because of her pregnancy, need for medical leave because of her pregnancy, and in retaliation for her prior complaints.

48. By discharging Lovelady, Prime interfered with and/or retaliated against Lovelady's use or attempted use of medical leave due to pregnancy complications.

49. Lovelady suffered damages because of Prime's conduct, including lost wages, emotional distress, and/or other damages.

### Pregnancy Discrimination, Harassment, & Retaliation
### <u>Title VII of the Civil Rights Act of 1964</u>

50. Lovelady asserts claims against Prime for pregnancy discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a), 2000e(k).

51. Prime discriminated against Lovelady because of her pregnancy by treating her differently after she disclosed her pregnancy, refusing to accommodate her need for medical leave because of her pregnancy, retaliating against Lovelady for using medical leave because of her pregnancy, and discharging Lovelady because of her pregnancy.

52. Prime harassed and created a hostile work environment for Lovelady because of her pregnancy by engaging in the conduct described above.

53. Lovelady did not welcome the harassment and opposed it before her discharge.

54. The harassment and/or hostile work environment directed toward Lovelady was severe, pervasive, frequent, persistent, demeaning, unrelenting, open, obvious, and altered the terms and conditions of Lovelady's employment, culminating in her discharge.

55. Prime had actual knowledge of the harassment and/or hostile work environment Lovelady was forced to endure but did not take reasonable steps to stop it.

56. Prime knew or should have known about the harassment and/or hostile work environment Lovelady endured but failed to take prompt and remedial measures to correct it, culminated in Lovelady's discharge.

57. Prime retaliated Lovelady because of her pregnancy, medical leave, and complaints, which resulted in her discharge.

58. The discrimination, harassment, and retaliation of Lovelady was directed and condoned by Prime's senior executives, including Rawlings and Moody.

59. Prime knew or should have known that Lovelady was protected against pregnancy discrimination in her employment by Title VII of the Civil Rights Act of 1964.

60. Prime had more than 15 employees when it discharged Lovelady.

61. Lovelady was an "employee" as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).

62. Prime is an "employer" as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b).

63. Lovelady was a member of a protected class because she is a female who was pregnant.

64. Lovelady was qualified to work for Prime at the time of her discharge.

65. Lovelady suffered an adverse employment action when she was discharged.

66. Lovelady's discharge was pretextual because it was based on falsehoods, distortions, and is otherwise unworthy of belief because Lovelady did not destroy her work laptop.

67. Lovelady engaged in protected activity in her employment when she complained to Rawlings on or about April 15, 2018.

68. Lovelady was discharged the same day as her complaint to Rawlings.

69. As damages, Lovelady has suffered lost earnings, past and future, emotional distress, and/or other actual and compensatory damages.

70. Lovelady is entitled to punitive damages because Prime acted intentionally, willfully, wantonly, or in reckless disregard of Lovelady's rights.

71. Lovelady also seeks to recover attorneys' fees, costs, prejudgment interest, post-judgment interest, and all other relief allowed by law or equity.

### Interference & Retaliation for Medical Leave
### Family and Medical Leave Act

72. Lovelady asserts claims for interference with and retaliation for her use or attempted use of medical leave under the Family and Medical Leave Act, 29 U.S.C. § 2615.

73. Prime interfered with Lovelady's rights under the Family and Medical Leave Act by refusing her request to work from home using the work laptop and discharging her to prevent her from using or attempting to use medical leave during her pregnancy.

74. Prime retaliated against Lovelady for exercising or attempting to exercise her rights under the Family and Medical Leave Act after she sought

and received emergency medical treatment for pregnancy complications at a hospital in or around April 2018 by discharging her.

75. Lovelady was protected by the Family and Medical Leave Act during the last month of her employment.

76. Lovelady was an eligible employee under the Family and Medical Leave Act because she was employed for more than 12 months before her use or need for medical leave and worked for at least 1,250 hours in the 12 months before her use or need for medical leave in or around April 2018.

77. Prime was an "employer" as defined by the Family and Medical Leave Act, 29 U.S.C. § 2611(4).

78. Prime had more than 50 employees within a 75-mile radius of Lovelady's work site at the time she took emergency medical leave in or around April 2018.

79. Lovelady's pregnancy complications constituted a "serious health condition" under the Family and Medial Leave Act, 42 U.S.C. § 2611(11).

80. Prime committed willfull violations of the Family and Medical Leave Act, 29 U.S.C. § 2617(c)(2) because it engaged in intentional conduct at the direction of Prime's most senior executives to deprive Lovelady of her federally-protected rights for malicious reasons that disregarded Lovelady's pregnancy and the wellbeing of her unborn child.

81. Prime engaged in a concerted campaign to deprive Lovelady of her rights by interfering with her need for medical leave and retaliating against her use or attempted use of medical leave when it knew or should have known its conduct was prohibited by the Family and Medical Leave Act.

82. Prime acted with reckless disregard of Lovelady's rights when it knew or should have known its conduct was prohibited by the Family and Medical Leave Act.

83. Prime's interference and retaliation of Lovelady's rights was committed with intentional discriminatory and/or retaliatory intent and was persistent, demeaning, unrelenting, open, obvious, and designed to unlawfully violate Lovelady's rights.

84. As damages, Lovelady seeks lost wages, liquidated damages, interest, attorney's fees, costs, reinstatement, and/or all other legal or equitable relief allowed by the Family and Medical Leave Act.

**WHEREFORE**, Plaintiff Kayla J. Lovelady prays the Court enter final judgment against Defendant Prime Industrial Recruiters, Inc., doing business as Elite Workforce Management and award actual damages, lost wages (past and future), emotional distress damages, liquidated damages, punitive damages, attorney's fees, costs, prejudgment interest, post-judgment interest, and all other relief allow by law or equity.

Respectfully submitted,

**KAYLA J. LOVELADY**,
Plaintiff, by and through:

_____
Joshua Stockton, OBA # 21833
Laura Talbert, OBA # 32670
**STOCKTON TALBERT, PLLC**
1127 NW 14th Street
Oklahoma City, OK 73106
Phone: (405) 225.1200
Email: jstockton@stocktontalbert.com
Email: ltalbert@stocktontalbert.com
**ATTORNEYS FOR PLAINTIFF**